Mr. McCarthy, good morning to you. Welcome back to the Court. We see you here often, and appreciate your experience and skill in presenting the argument. Thank you very much, Your Honor. May it please the Court. The United States appeals the judgment below because it arises from an unauthorized proceeding in the context of a comprehensive statutory scheme that provides ample channels of due process to importers, to foreign producers and exporters, and to domestic parties, and also it reflects Congress's very strong interest in administrative finality. If Your Honor looks at the statute, you'll see many very short statutes of limitations. Let me ask this. In the 84 amendment, which seems to prevent judicial review of Commerce Department determinations, the Congress apparently allowed that sort of interlocutory judicial review for Trade Commission determinations. What would the logic be that would need Congress to say, well, we've got to have finality if it involves Commerce determinations, but we don't need finality if it's Trade Commission determinations? Well, I think it's the fundamental difference in the proceedings before the Commission and before the Department of Commerce. The Commission has an injury determination, or they might have a sunset review. There are really two opportunities in order to have proceedings over a course of time, whereas the Department of Commerce has administrative reviews that are conducted on an annual basis, so a lot of changed circumstances that may happen among the parties over the course of time can be folded into and ventilated through the administrative review process. And so there's a very clear opportunity for interested parties to raise any claims that they may have based upon the changed circumstances through the administrative review process that captures a lot of those circumstances. And so Congress, in the legislative history, was expressing a concern about the fact that they originally, in the original version of that, they had hoped that providing this interlocutory review would lead to the expeditious resolution of issues. It found that cases were getting stalled and dragged down in litigation, and it was actually impeding the timely resolution of these issues. But only in Commerce, not in the Trade Commission. Because the Commission really only has the injury determination at the beginning, and then there's a sunset review. There's not an opportunity for the Commission to look at issues and changes of circumstances with such regularity. There are many more proceedings and internal administrative reviews going on at the Department of Commerce. So there is a material difference in the way those two entities operate and function, which would explain why Congress would delete a review of a— I guess your fallback argument is even if it was counterproductive and stupid, just what Congress did, and what they did is clear, and they took away jurisdiction, so it's gone. Absolutely. Absolutely. I want to be sure. It's your position that Congress's refusal to initiate a changed circumstances inquiry is never judicially reviewable, no matter how arbitrary and capricious Commerce may be. If Congress said, we're not initiating this particular review because we don't like the lawful, that's not reviewable. Well, I think the feedback with Congress, rather, speaking in 1984, was to the extent that Commerce— But your position is that's not reviewable. Yes. I'm sorry. Yes, Your Honor. That's our position, and the reason why it was—to make it less harsh is because to the extent that Congress is acting in an arbitrary and capricious way, the change of circumstances can be ventilated through the annual administrative review process. And that is reviewable. And that is certainly reviewable under 1581C. If they don't have annual reviews, then what? Well, this is a very unique circumstance here, which is precisely why there is no jurisdiction here. No, no. I'm asking, if there is no annual review, then what? Does that grant jurisdiction to the court of international affairs? No. Actually, to be clear, I don't want to be unambiguous about our position. Our position is that Congress, in deleting that provision for judicial review in the 1984 amendment, made the decision to decline to initiate a change of circumstances review within the sole unreviewable discretion of the Department of Commerce. But that was promised in the fact that you have annual reviews. In this particular case, there was no annual. Well, there could also be sunset reviews. There are a host of different reviews that could come up in the future. In this particular case, where the trial court was focused on was the fact that because the order had been revoked, there was really no review at all, no sort of administrative proceeding down the pipe, as it were. But that's not an argument in favor of review. That's an argument as to why there's – it just establishes why there's no jurisdiction here, because there was really – there's no – there was ample avenues of review under 50A and 1C on the change – the first change of circumstances review, which was stay, which is a fully legitimate proceeding, which was stay pending the outcome of this illegitimate proceeding, which was the subject of this appeal. Well, why do you think it's true that it raised the issue as to the proper effective date in the first change of circumstances review? Is that correct? Our position is that if that issue – the proper effective date was fairly important. How come they have done that? Because if you side read the record, they didn't change their position as to the effective date until after the first review was completed. Is that wrong or is that right? The domestic petitioner did not change its position as to the effective date until after there was a settlement. Then how could they have reviewed it in the first court? It didn't have any basis. Because it – because we firmly reject the notion of the trial court and the pay of AFL that there is some preternatural right of a domestic petitioner to change its mind at any time in perpetuity. My question to you is how could they have litigated the issue in the first case, the first proceeding, when at that time they hadn't changed their own position on it? In other words, are you saying they should have – they should have also litigated in the first proceeding the claim that, well, we may change our mind later on? Because they don't have a right to do that. They are judicially estopped. We think New Hampshire v. Maine. And this is why we're appealing. This is a very important issue that Justice Ginsburg mentioned in her decision in New Hampshire v. Maine. This is an integrity of the judicial process. If I could draw your – the Court's attention to 532 U.S. and 749, Justice Ginsburg talks about this is the first opportunity that the Court has had to really explain the reasons for the doctrine of judicial estoppel. You don't – as I read your brief, you do not contend that this change they underwent as to the effective date, what date it should be put off at, that that did not constitute changed circumstances within the meaning of the statutory scheme. You don't make that argument, do you? Is it something that Congress is obligated to consider? No, I'm not talking about that. Congress says they will institute proceedings to deal with changed circumstances. And the first one is obviously a changed circumstance. The sole domestic producer has gone out of business and is bankrupt. Now, the second alleged changed circumstance is the domestic. Industry said we now like to change – we now agree the effective date should be seven or eight years earlier. And my question to you is do you say, don't say, that that did not constitute a changed circumstance and, therefore, Congress would justify it and refuse it to initiate any proceedings? It's not really a legitimate changed circumstance because there's nothing that materially – it's not really a legitimate changed circumstance. I didn't ask you whether it's a legitimate change. I asked you whether you take the position it's not a changed circumstance within the meaning of the regulation, the statute. I take it you don't say that. It could be viewed as a changed circumstance, but whether it is – You say it could be viewed as – It could be viewed, but it's not a legitimate changed circumstance because there's nothing – I want to point out, Your Honor, that there's nothing that materially changed from the time of the – All I want to be sure that you're not arguing that it's not a changed circumstance. I don't know that it's not a changed circumstance, but it's not a legitimate because there wasn't any material change in the status of the domestic regulation. The change wasn't really – it seems to me the first one obviously relates to the whole purpose of the anti-filming duties, which is to protect the American industry, but the second one seems to affect only the particular situation of this company. Well, interestingly, in footnote 6 of Judge Goldberg's opinion below, in his 2006 opinion below, he notes that the domestic petitioner did not even have Article III standing to raise, to present his 1581-I claim. He suggested in his footnotes that there's almost a symbiotic relationship between Hayek, who supplies the Article III standing – The whole question in this appeal is whether there was jurisdiction. Right. That's why you're arguing in this appeal. There's another case involving the merits of this thing like that and kicking around. Well, we're not appealing the merits. There's a state action. There's a legitimate 1581-C action that's a state. What we have to decide in this appeal is whether Justice – Judge Goldberg correctly held that he had jurisdiction over it. Right. And he did not have jurisdiction for two reasons. Number one, not – the domestic petitioner had – did not – was not lacking a manifestly inadequate remedy because it had a full and fair opportunity to present its position regarding the proper effective date. And the fact – once it makes – once it states its position, it is judicially escoffed from taking a different position. Its circumstances – its own circumstances haven't changed. The only thing that's changed is that it has sold – in a backroom agreement with the Mayfell, it sold its claim for that – you know, its position that it had regarding the effective date. That's not – that's not something that – that wouldn't tell you about leveling the playing field there. We're so far afield from the remedial purposes of the statute already of the legitimate functions of the agency. And this is really an effort to coerce the agency to go along with the settlement that two private parties negotiated. And as Justice Ginsburg talked about in the Hatchery Beginning, this – principles of judicial snuffle are really very important to protect the integrity of the judicial process, in this case, and not just the administrative process. And she also quotes – at 532 U.S. at 750, she quotes the Fifth Circuit's decision in the United States v. McCluskey by saying that it prohibits parties from deliberately changing positions according to the exigencies of the moment, which is precisely what occurred here. A domestic petitioner that has ceased operations, it's in bankruptcy, nothing changed regarding its position between the first change circumstances review and the second, other than it managed to sell its claim to Havanfield. And that is not a legitimate reason for this court to take what Justice Rastani talked about in AOC International as an extreme situation of evoking 1581's I jurisdiction in the face of a clear stripping of jurisdiction for a denial of a change circumstances review. Why would that be considered material change, the bankruptcy position? It was in the first change circumstances review. There was a material change. The domestic petitioner ceased operations. They went into bankruptcy. And that is a – that is the subject, and that is why the Congress revoked the order. And the subject of the proper revocation, of the effective date of the revocation, is a fully proper, squarely presented in the legitimate 1581C change circumstances review, which was unfortunately, over objection, stayed by the trial court pending resolution of this illegitimate proceeding. And this is why we're appealing. This is very, very important for principles of administrative finality. What we have – we also have, if the court looks at the statement of related cases, we also have a case that was litigated by this – adjudicated by this court several years ago, 2003, I believe, and involving entries from 1995, 1996. These are 14-year-old entries. This is precisely what Congress did not want. These entries are just hanging around, being stayed, pending the resolution of this – of this proceeding. And that's precisely what Congress did not want, which is why it amended the statute in 1984, to make it more efficient, to allow lots of due process for interested parties, but also to have things move quickly, which is why there are 30-day statutes of limitation and so forth. If I may reserve the remaining amount of time for – Don't go anywhere. We'll restore your revocation. Okay. I don't quite follow your local references to what Congress wanted and intended. As I recall, the amendment in 1984 that deleted, as to commerce, the interlocutory judicial review, even though it was retained as to the trade commission, that the committee report didn't give any explanation for that change. And you keep saying they wanted this and they intended that and this is what they were worried about. Well, what do you rely on? What specific language, where in the report, shows that they wanted to have these changed circumstance denials by Congress not judicially reviewable because otherwise there would be too much delay or whatever? Well, I admit, Your Honor, I'm taking it out of the liberal – you're absolutely correct, Your Honor. The paragraph, which is a little bit dense paragraph of the legislative history, does not specifically refer to the changed circumstances provision or to the deletion. And it doesn't distinguish between the two. So that's because there's no legislative history, but you've been arguing that the legislative history supports your position. I don't understand how you can reconcile those two positions. We would like to first rely on the plain language of the effects of that. Well, that's a different matter. I'm only addressing your reliance in part on alleged legislative history. But when I look specifically, it seems that alleged legislative history is nonexistent. Well, the court did – Congress, excuse me – did generally refer to changes made in 1516a in its general matter and did talk about the need to remove interlocutory review. And there were other changes made to that provision. I mean, there were substantial changes made to that provision. And it – I can see I'm affirming from the comments of Congress that this interlocutory piece in the litigation was rather than creating more efficiency, it was creating more inefficiency. And that the reason why – and the reason why I'm affirming that in terms of the distinction between commerce and the commission, this is just an explanation that has been understood. And it was actually mentioned and analyzed by Judge Goldberg below. And I don't know that there's much dispute. I mean, we actually dispute – we, of course, disagree with Judge Goldberg's analysis of the meaning of interlocutory review and how – and have angle adopts that. We don't – I frankly, to be honest, don't even understand it, other than it would be an unworkable solution to say that this is somehow because there wasn't enough – because the order was revoked and there weren't any future administrative proceedings, that this would be a final order subject to APA would be – I – that's what I understand the position to be of the trial court, of holding the trial court in the division. And I don't think there's any support for that. Well, the effect of the 1984 amendment, I guess, was to prevent interlocutory judicial review of any type of commerce department order. Is that right? Yes. So you're saying that genus would necessarily include the specie of a changed circumstance review. And therefore, even though there's no specific reference to the deletion of the words the administering authority, the relevant deletion here, that nevertheless, the general purpose evident in the rest of the committee report would also apply to this particular deletion of language because the same goal is at work. We don't want non-final commerce department determinations reviewed by the trade court under any circumstances, any kind of review. And the reason the rationale being, as a practical matter, is that there's so many avenues for judicial review that are provided in the statute. And specifically changed circumstances can be captured by those many avenues for review. All right. Let's hear from the other side. Mr. Campbell. Good morning. May it please the court. My name is Jay Campbell. I'm here today on behalf of the preventative board. I will address three main points. First, the court of international trade had a residual jurisdiction in the subsection 1581I to review commerce's decision not to initiate the changed circumstances review requested by domestic industry. Would you agree that the trade court can't have jurisdiction under I if 16C provided an adequate remedy? 1581C? Yes, I would agree with that. So then what about the adequacy of the remedy? 1581C, in this case, with respect to the issue, with respect to the changed circumstances review that the domestic industry requested, 1581C was manifestly inadequate. The specific changed circumstances that occurred was that the domestic industry, I'll refer to them as an R, and a Bayfield concluded a settlement. And as a result of that agreement, the domestic industry no longer had an interest in the effectiveness. The question has to do with the adequacy of proceeding under 16C. And you're saying it's not adequate, and I'm trying to understand why the procedure provided by that provision is not adequate. 1581C was not adequate for review of the specific remedy that the domestic industry and Bayfield sought, which was revocation of the anti-dumping order, retroactive to October 1, 1995, in light of the changed circumstances resulting from the settlement between the Bayfield and the domestic industry. My point is, if they had reached the settlement earlier, then the initial changed circumstance proceeding that Congress didn't reject but undertook would have been adequate. So the problem is just that the agreement came too late. But that doesn't show a deficiency in the procedural opportunity provided in the first changed circumstances proceeding. No, Your Honor. Again, the first proceeding was, the first changed circumstances review was not adequate for reviewing the specific issue. For the precise reason that the settlement that led to the changed circumstances and the change in NART's, the domestic industry's position, occurred later. Yeah, I understand that. But if NART had negotiated the settlement earlier, then it would have been in time to be taken up in the first changed circumstances proceeding. Well, it didn't, Your Honor. And the statute and regulation affords the domestic industry, recognizes the domestic industry's interest in the enforcement of the anti-dumping order may change over time for any number of reasons. And the statute and regulation places no limits on when the domestic industry's interest must change or how often. In light of this, all the domestic industry did was request a changed circumstances review in light of the fact that it settled, reached a settlement with Hoveafil, and it no longer supported continued enforcement of the anti-dumping order with respect to the entries covered by the 95-96 review. And on that basis, the domestic industry requested a changed circumstances review with Congress, which it is entitled to do under the law. Is it your position, basically, that the inquiry isn't whether, as a theoretical matter, they could have proceeded under C, but whether, as a practical matter, there was any way that they could have gotten effective relief had they gone under C? And you say, no, because at the time of the first proceeding under C, this issue wasn't open. It hadn't arisen yet. Right. Changed circumstances could occur at any time. There's no limitation on when the domestic industry's interest may change. You're saying that the changed circumstances, changed position of the domestic industry was the result of the settlement. Yes. That was the intervening event that occurred that led to the domestic industry to change. After the first changed circumstances proceeding had been completed. Exactly. This settlement occurred after the first CCR. I'll refer to a changed circumstances review as a CCR. It's a little easier. The settlement occurred after the first CCR. For this reason, neither the first CCR nor Hoveafil's appeal of that CCR are an adequate form for review of the remedy that is sought. The first proceeding procedure basically concerned whether the anti-dumping order should be revoked at all. Yeah. The second proceeding was saying, okay, now it's being revoked. We now have a question over as of when. Well, Your Honor, in the first CCR, the issue of – it was still – you know, the primary issue was, yes, whether the order should be revoked at all. But it was also an issue what the revocation date should be. Well, the revocation date was pushed back to 2-03 in the first one. That is correct. Your Honor, you're asking for a second revocation date all the way back to 9 o'clock in the second one because of the alleged changed circumstances of the settlement. Right. I mean, another way to look at it, Your Honor, the way we look at it is in the first CCR, Commerce decided to revoke the order as of October 1, 2003. There is still – Wait, wait, wait. Not on their own. That's what you asked them to do. Now, we did not ask Commerce to revoke the order as of October 1, 2003. Nevaeh Fiddle asked the Department of Commerce to revoke the order as of October 1, 1995. At the time of the first CCR, it was the domestic industry's position that the order should not be revoked retroactively to 1995. Nevaeh Fiddle was the first – So those are less than the first revocation request to go back to 1995? In the first CCR requested by Nevaeh Fiddle by virtue of the fact that the domestic industry went out of business or ceased operations, Nevaeh Fiddle requested revocation retroactively to October 1, 1995. So you could have appealed that but not Nevaeh Fiddle? And Nevaeh Fiddle did. But nevertheless, because of the changed circumstances, neither the first CCR nor Nevaeh Fiddle's appeal are manifestly adequate for review of the precise issue, for the precise remedy sought now by the domestic industry and Nevaeh Fiddle, which is revocation of the anti-dumping order retroactive to October 1, 1995 in light of changed circumstances resulting from the settlement. That issue cannot be addressed in either the first CCR or the appeal of that first CCR. So it's manifestly inadequate. But if you were denied the first time – I'm sorry, Your Honor? If you were denied the first time going back to 1995, what were the changed circumstances at that point that you would have requested to go back to 1995? It wasn't the settlement. I'm sorry, Your Honor. Can you repeat the question? Who requested the first revocation going back to 1995? Nevaeh Fiddle did. Nevaeh Fiddle requested a CCR on the basis that the domestic industry ceased operations, and Nevaeh Fiddle requested revocation of retroactive to October 1, 1995. At that time during that review, that review predates the settlement between the domestic industry and Nevaeh Fiddle. So at that time during the first CCR, the domestic industry did not support revocation of retroactive to 1995. What date did they support? I don't know. I believe the Department of Commerce proposed in the preliminary results a revocation date of October 1, 2003, and the domestic industry supported that. I don't know that the domestic industry supported that. In the first revocation proceeding, did you affirmatively oppose making it effective to 1995? We did not. I represent Nevaeh Fiddle. Nevaeh Fiddle requested revocation of retroactive to October 1, 1995. But during that first CCR, the domestic industry did not support revocation of retroactive to that date. It wasn't until after... They did not support. Did they actively oppose the earlier date? I believe so. Well then, why isn't there an estoppel problem, as Ms. McCarthy has suggested? If the domestic industry took a position in the first proceeding that the correct date was 03, not 1995, and they persuaded the administrative decision-maker that that was correct, and they got that date, why couldn't they be able to come back in a subsequent proceeding and take the exact opposite position? There's no estoppel problem here. No estoppel. The domestic industry has not stopped applying the Supreme Court's three-factor test. The bottom line is that there's no... Estoppel is meant to protect the integrity of the administrative and judicial process. If the integrity of the administrative process is not violated here, when the statute and regulation contemplate that the domestic industry may change its interests, may decide over time that it's no longer interested in continuing enforcement of the anti-dumping order, and the statute and regulation place no limits on when or how often the domestic industry's interest in change. In light of that statutory regulatory scheme, the domestic industry simply made use of an administrative remedy that is entitled to pursue... Are you saying that the statutory scheme implicitly trumps estoppel, just altogether never available because of the changed-circumstance statute? In this case, Your Honor, let's walk through the factors. There are three factors that the Supreme Court in New Hampshire recognized with respect to estoppel. The first factor is that the party's later position must be clearly consistent with its earlier position. That inconsistency factor does not apply here when all the domestic industry did was pursue an administrative remedy that the statute supported under the statute and regulation. Again, the statute and regulation contemplate and recognize the domestic industry's interest in enforcement of an anti-dumping order may change over time and entitle the domestic industry to request, seek revocation of an anti-dumping order on the basis of these... My question is, yes, the doctrine of collateral estoppel is altogether abrogated in these circumstances by the fact that the statute contemplates the domestic industry changing its position from one to another to another over time. In certain cases in this case, estoppel does not apply. In one sense... Because of what? Because of the statute? Well, right, because the statute entitles, it recognizes... Is there any case that holds that the existence of this statute precludes estoppel? I'm not aware of any, Your Honor, but I do... You know, it's our case that the three factors to support estoppel are not satisfied in this case. If you think about it this way... Which one is not satisfied? All three. None of them are satisfied. The inconsistency... The real question here, whether the change... What about the second request for reconsideration, for reexamination? That is, the fact that they now favor one date rather than another, whether that's enough to somehow get around the doctrine of judicial estoppel. It seems to me the question is... I think everyone would agree that judicial estoppel is not an absolute law. There may be extraordinary circumstances that warrant, for many of you, a change of position. The question is whether what was done here, what happened here, is sufficient to warrant an exception. And what you have here is not... It's not a kind of a sea change. What it is, is at one point they favored one date, and then they had a settlement. We don't know the terms of the settlement, understandably. And after the settlement, they took another date. Is that enough to justify their shifting from the position they took in the first case to the position they took in the second? It is, Your Honor, because under the statute, the domestic industry has the right to seek revocation of an anti-dumping order if it no longer is interested in enforcement of the anti-dumping order. And there are no limitations on when or how often the domestic industry's interest may change. And with respect to the first factor, inconsistency, in one sense there is absolutely no inconsistency because in the first CCR, the domestic industry took one position. In the second CCR, there was a new context. There were changed circumstances, and these changed circumstances. There was a settlement. These circumstances had nothing to do with the underlying purpose of the anti-dumping order. I mean, this wasn't a changed circumstance in the sense that the domestic industry had changed, new people had joined, that other people were leaving, or that the products had changed. It wasn't that kind of a sea change. The only sea change is that they now decided they preferred to have it effected earlier rather than later. Okay, Your Honor. There are no limitations in the statutory definition of changed circumstances as concerns the domestic industry's interest in enforcing the order. The statute and regulation, all they state is that they recognize that the domestic industry has the right to seek revocation of an anti-dumping order if it is no longer interested in enforcing the order for a variety of reasons. Now, the second factor... Well, what's your basis of saying it can be any reason? Isn't there an argument that could be made that it has to be a reason dealing with the market, with the product, with the imports, with the prices, with the injury to domestic industry and things of that sort? It can't be anything under the sun. I disagree, Your Honor. The change... Again, let's take this back. The anti-dumping law, the purpose of it is to remedy harm to the domestic industry that results from dumping. If the domestic industry is no longer interested in enforcement of the order for whatever reason, as the Department of Commerce has recognized in other cases, it flies in the face of reason to continue that dumping order. This is Congress's sound policy behind creating in the statute the ability of the domestic industry to seek revocation of an anti-dumping order when it's interest... Let me give you an extreme hypothetical to sort of test how far you're trying to go here. Suppose I'm in the foreign industry and Judge Friedman's the domestic industry. And petitions are filed, investigations ensue. It's found that I'm dumping products in the United States. It's hurting the domestic industry as exemplified by Judge Friedman's company. And so duties are put in place and collected and so forth. Then later, I pay a huge bribe. I'm in the foreign industry. I pay a huge bribe to the companies in the American industry. And I ask them, in return for the bribe, would you please go back to the Commerce Department and tell them you don't want any tariffs anymore? Would that be a changed circumstance? Would it be legitimate? Would it be consistent with what Congress wanted to happen here? The bribery does not sound consistent, Your Honor. But in this case, at heart, a dispute, a trade dispute, is a dispute between a domestic industry and a foreign industry. And in this case, there is no authority that could preclude an AFL and a domestic industry from seeking a settlement throughout a trade dispute. In fact, settlement should be encouraged. That's what they've done here. Those constitute changed circumstances. In light of those changed circumstances, the domestic industry requested a changed circumstances review. Congress declined to initiate it. Suppose in Judge Mischel's hypothetical, instead of this paying you a huge bribe, you agreed to employ my son in a very attractive position and gain a long-term contract. Would that be a changed circumstance that they have to consider? Or would you say that I'm trying to get a case, and I think Judge Mischel is too, where the changed circumstances have absolutely nothing to do with a basic issue in the underlying anti-government proceeding, but for whatever extraneous reason the domestic industry has announced that it's no longer interested in enforcing the old order. And that's the question, does the lack of interest have to have some connection to the underlying purpose of the anti-W order, or could it be anything? Well, maybe I agreed to, maybe Judge Mischel agreed to buy my house that I've been having trouble selling at a very high price. I mean, there are all sorts of conceivable hypotheticals you can think of that have nothing to do with the underlying purpose of the anti-government. Well, Your Honor, the statute of regulation imposes no limits on changed circumstances. So any limitation would have to be created by a court. Your position is that any statement by the domestic industry that it's no longer interested in enforcing, that's the end of it? That's what the statute says. But there's another important consideration, Your Honor. It's not easy for the domestic industry to come in and make this request. The statute says that substantially all of the U.S. producers that constitute the domestic industry must be in agreement and no longer favor continuation of the anti-dumping order. In the commerce practice, that means that 85% of the U.S. If the producers accounted for 85% of U.S. production, that's what constitutes enough to satisfy the substantial requirement. So it would really take a broad consensus amongst the domestic industry to even be able to have the right to come in and request revocation in order to change circumstances with you. In this case, it so happens that there was only one U.S. producer, NARC, and so we don't have that issue. Are there any unliquidated accounts that are still outstanding? Yes, Your Honor. That's why we're still here. There's the 1995-1996 review, and there are unliquidated entries covered by that review. That review has been appealed. That appeal has stayed pending. The first CCR, and that appeal has stayed pending the resolution of this CCR. Who would have a right to those accounts now? Because that's part of the settlement. The settlement does concern the... The idea of the settlement is that if Congress initiates and conducts a change of circumstances review and invokes anti-dumping order retroactive October 1995, then dumping duties can no longer be collected and the deposits would be refunded. What does that mean? Well, the deposits would be refunded to the importer, which in this case is an affiliate of AFL, and the settlement agreement, yes, it involves... Refunding of those accounts. But it involves an arrangement between the domestic industry and AFL in respect to those refunded deposits. So that's the entire issue, then, is to... Refunding those deposits that are still being held. That's the basis for a settlement. All right, anything further? Well, I would love to address the 1984 amendment, but if I could have a minute, but if not, I know I'm well over my time. Well, I think we've got that in the briefs. Mr. Corky will give you the two minutes of rebuttal that you had sought to reserve. Thank you, Mr. King. Thank you, Your Honor. We strongly disagree with the notion that trade disputes involve two parties, domestic industry and foreign producers or exporters. There's actually the Department of Commerce, which is actually administering this remedial statute enacted by Congress, and the Department of Commerce has very strong interests in this litigation and dispute. What is the public interest at this point? The public interest is in the integrity of the fair and honest administration of the statute, as Congress envisioned, with clear channels of due process and review, and this is not one of them. And the public interest is also in having a timely liquidation of entries that have been subject to completed administrative reviews and judicial review. Slow down. What happens to those unliquidated accounts if they do not go back to 1995? There are unliquidated accounts from 1995, 1996, probably 1997. What happens to those accounts if they're not liquidated? Do they just sit there forever? This is why we're appealing. Those entries are subject to a completed administrative and judicial review, and they should be liquidated in accordance with the adverse effects available rate that this Court upheld in 2003, and it was remanded back for recalculation of the rate. Those are ready to be liquidated. So if they're liquidated, they're nowhere in the public treasury? Yes. So it's really a question of money. Well, the government's interest is not. We're not looking to make money out of this. I'm saying it's really a question of money. Yes. Entirely. Nobody seems to get to that point. Well, it's an interest. Well, I respectfully disagree with Your Honor. Our interest is in the fair administration of the statute and the integrity of the scheme, and the purpose of the statute is to level the playing field. This signed deal between Habeasville and the domestic producer has nothing to do with leveling the playing field. It's about selling a claim that they've managed to hold on to, and I think it's very interesting that Habeasville's counsel is sitting in the courtroom, and he's arguing for this proceeding brought by the domestic industry with his own legitimate change circumstances challenge, and the effective date of that revocation are sitting for the Court of International Trade's stay, only for the outcome of this illegitimate proceeding. There's no reason why Habeasville cannot make all the arguments it wants regarding how it believes that the order should be provoked back to 1995. And one last point I'd like to make. Where would that be able to be argued? At the Court of International Trade. And the issue is pending there. The issue's pending there. That's the legitimate proceeding. That should be where these issues should be decided. And the one thing I'd like to make, the last point I'd like to make, and I'm going to go over my time, is that the Department of Commerce does not take marching orders from the domestic industry, simply because the domestic industry decides that it wants to have a different effective date. They're not the boss of the world. So the Commerce would have its own positions regarding the proper effective date, which could be litigated in a proper 1581C action pending before the Court. Thank you so much. I look forward to spending time with you. Thank you. Both counsel will take the appeal under advice.